1  Juan Hong (State Bar No. 234046)
   Law Office of Juan Hong, A Law Corp.
2  4199 Campus Drive, Suite 550
   Irvine, CA 92612
3  Phone: (949) 509-6505
   Fax: (949) 335-6647
4  Email: jhong48@gmail.com

5

6  Attorney for Plaintiff
   CONNIE CHONG

7

8

9                    United States District Court
10             For the Central District of California

11

12  CONNIE CHONG, Individually and On )   Case No.
    Behalf of All Others Similarly Situated )
13                                      )   <u>CLASS ACTION</u>
    vs.                                 )   **COMPLAINT FOR:**
14                                      )   (1) VIOLATION OF CAL. BUS. &
15  HORMEL FOODS CORP., and DOES )          PROF. CODE §17200: Unlawful
    1 through 10.                       )   Conduct
16                                      )   (2) VIOLATION OF CAL. BUS. &
                                        )   PROF. CODE §17200 Unfair Conduct
17  Defendants.                         )   (3) VIOLATION OF CAL. BUS. &
18                                      )   PROF. CODE §17500 *et seq.*
                                        )   (4) VIOLATION OF CAL. CIVIL
19                                      )   CODE §1750 *et seq.*
                                        )   (5) UNJUST ENRICHMENT/
20                                      )   BREACH OF QUASI CONTRACT
21                                      )
22

23

24

25

26

27

28

                            1 (COMPLAINT)

## INTRODUCTION

1.     Plaintiff Connie Chong ("Plaintiff"), individually and on behalf of all others similarly situated, bring this Class Action Complaint against Hormel Foods Corp. ("Defendant"), and on the basis of personal knowledge, information and belief, and investigation of counsel, alleges as follows:

2.     This action deals with two products by Defendant: SPAM 25% LESS SODIUM, and SPAM LITE ("the SPAM Products").  At all relevant times, Plaintiff bought the SPAM Products from grocery markets including the Hannam Chain Market located at 2740 W. Olympic Blvd., Los Angeles, California. Plaintiff paid about $3 - 4 each.

3.     "SPAM" is a canned meat and poultry line that Defendant manufactures, markets, and sells.

4.     Defendant labels the SPAM 25% LESS SODIUM with prominent claim, "25% Less Sodium," which consumers perceive to mean that the canned meats are low in sodium and healthy.  The product includes a mark stating: "US Inspected and Passed By Department of Agriculture."  The nutrient facts indicate 16g of total fat and 580mg of sodium.  Defendant labels the SPAM LITE with prominent claims, "50% Less Fat, 25% Less Sodium, and 33% Fewer Calories," which consumers perceive to mean that the SPAM LITE is low in sodium and fat to be healthy.  The product includes a mark stating: "US Inspected and Passed By Department of Agriculture."  The nutrient facts indicate 8g of total fat and 580mg of sodium.

5.     The "Nutrition Facts" on the side panel shows that the SPAM Products contain sodium at a higher level than the sodium content of 480 mg above which the food is disqualified from making a health claim.  The SPAM Products contain sodium at 580 mg.  The SPAM 25% LESS SODIUM and the SPAM LITE contain total fat at 16g and 8g, respectively. The SPAM Products contain fat at a higher

level than the fat content of 3g above which the food is disqualified from making a
health claim.

6.      The labels of the SPAM products do not expressly claim that the products
are healthy or healthful.

7.      At all relevant times, the Defendant's website,
http://www.spam.com/varieties/spam-lite, includes advertising statements for
SPAM Lite that: "Heavy on the flavor, light on the other stuff.  This variety offers
the scrumptiousness of SPAM® Classic with 33% less calories, 50% less fat and
25% less sodium, which means you can enjoy the taste you love more often. It's
the perfect SPAM® variety for swimsuit season."  The plaintiff saw the statements
during the relevant times.  The advertising statements mislead reasonable
consumers that the product is healthful.

8.      At all relevant times, the Defendant's website,
http://www.spam.com/varieties/spam-less-sodium, includes advertising statements
for the 25% Less Sodium SPAM that: "Having to cut back on sodium can take a
lot of tasty things out of the equation.  Fortunately, SPAM® Less Sodium is not
one of those things.  It provides the same delicious SPAM® Classic flavor with
25% less sodium.  There's no sacrifice with this meat treat!"  The plaintiff saw the
statements during the relevant times.  The advertising statements mislead
reasonable consumers that the product is healthful.

9.      When Plaintiff purchased the SPAM Products, she did not read the
"Nutrition Facts."  Plaintiff would not have purchased the SPAM Products had she
known that the sodium and fat contents exceed the disqualifying levels.
Quantitative information comparing the levels of sodium and fat in the SPAM
Products per labeled serving size with that of the reference products that they
replace is not prominently placed thereon with such conspicuousness (as compared
with other words, statements, designs, or devices, in the labeling), and is not easily
legible.

10.    Plaintiff's claim is essentially that, because defendant's labels did not comply with state and/or federal requirements regarding the quantitative information, she could not see or did not understand the quantitative information, and therefore was misled by the unlawful packaging and purchased the product based thereon.  Defendant's products are misbranded and unmarketable.  Plaintiff was misled as a result of the misbranding and suffered economic injury because she purchased the products she otherwise would not have.

11.    She would purchase the products as long as Defendant repairs the labels complying with state and/or federal requirements, or Defendant reduces the sodium and fat contents below the disqualifying levels.

## NATURE OF THE ACTION

12.    Defendant ensnared Plaintiff and thousands of other consumers-victims ("Class") in a misleading scheme nationwide to sell Defendant's canned meat and poultry line, including SPAM LITE, and SPAM LESS 25% SODIUM ("SPAM Products").  Plaintiff purchased the SPAM Products.  Defendant uniformly misled Plaintiff and the Class that they would buy the SPAM Products.

13.    Plaintiff brings this class action on behalf of herself and all other similarly situated consumers who purchased the SPAM Products asserting claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*. ("UCL" or "§17200"); the Consumer Legal Remedies Act, Cal. Civ. Code §1750, *et seq*. ("CLRA"); the False Advertising Law, Cal. Bus & Prof. Code §17500, *et seq*. ("FAL" or "17500"); Unjust Enrichment/Breach of Quasi Contract.

14.    Plaintiff seeks damages and equitable relief on behalf of herself and the Class, which relief includes, but is not limited to, the following: their monetary damages; restitution; refunding Plaintiff and class members the full amount paid for the SPAM Products; injunctive relief for an order enjoining Defendant from falsely marketing and advertising the SPAM Products; punitive damages; costs and

expenses, including attorneys' and expert fees; interest; and any additional relief that this Court determines to be necessary or appropriate to provide complete relief to Plaintiff and the Class.

## JURISDICTION AND VENUE

15.     This Court also has original jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA"), as to the named Plaintiff and every Class Member, because the proposed Class contains more than 100 members, the aggregate amount in controversy exceeds $5 million, and Class Members reside across the United States and are therefore diverse from Defendant.

16.     The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).  Plaintiff has filed affidavits showing that this action has been commenced in a proper county pursuant to Cal. Civ. Code §1780(d).

17.     This Court has personal jurisdiction over Defendant because it has significant minimum contacts with this State, and intentionally availed itself of the laws of California by transacting a substantial amount of business throughout the State and this District, including but not limited to, the promotion, marketing, advertising, and sale of the SPAM Products throughout California and Los Angeles County, and on the Internet to consumers located throughout California and Los Angeles County.

18.     Venue is proper under 18 U.S.C. § 1965(a), because Defendant is subject to personal jurisdiction in this District as alleged above, and Defendant has agents located in this District.

## PARTIES

19.     Plaintiff Connie Chong ("Plaintiff") is a resident of the state of California. At all relevant times since 2015, Plaintiff learned about the SPAM Products when

she saw the labels of the SPAM Products displayed in grocery stores in Los Angeles, California, and the advertisements in SPAM website, https://www.spam.com.  Plaintiff purchased the SPAM Products in reliance on the Defendant's misleading labels and the advertisements.

20.     Defendant Hormel Foods Corp. ("Defendant" or "Defendant Hormel" or "Hormel") is a Delaware corporation with its principal place of business in Minnesota, 1 Hormel Place, Austin, MN 55912.

21.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as DOES 1 through 10 are unknown to Plaintiff, who therefore sues the DOE defendants by such fictitious names. Plaintiff will amend this complaint to show true names and capacities when they have been ascertained.  Defendants will refer to Hormel Foods Corp., and DOES 1 through 10.

22.     Defendant deliberately cultivated the misleading statements through its marketing of the SPAM Products.

**CLASS ACTION ALLEGATIONS**

23.     Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiff brings this action individually and on behalf of a proposed class defined as follows:

**The Nationwide Injunctive Relief Class**.  All persons residing in the United States and its territories who purchased one or more of the SPAM Products for their own use, and not for resale, since January, 2016.  Plaintiff asks the Court to adjudicate only liability, declaratory relief, and injunctive relief through the Injunctive Relief Class; the Injunctive Relief Class does not seek any form of monetary relief.

**California Subclass for The Injunctive Relief**.  All persons residing in the state of California who purchased one or more of the SPAM Products for their own use, and not for resale, since January, 2016.  Plaintiff asks the Court to adjudicate only liability, declaratory relief, and injunctive relief through the Injunctive Relief Class; the Injunctive Relief Class does not seek any form of monetary relief.

24.     Additionally, pursuant to Rule 23(a) and (b)(3), Plaintiff brings this action individually and on behalf of a proposed class (the "Monetary Relief Class") defined as follows:

**The Nationwide Monetary Relief Class**. All persons residing in the United States and its territories who purchased one or more of the SPAM Products for their own use, and not for resale, since January, 2016.  Plaintiff asks the Court to adjudicate all remedies through Monetary Relief Class.

**California Subclass for The Monetary Relief Class**. All persons residing in the state of California who purchased one or more of the SPAM Products for their own use, and not for resale, since January, 2016.  Plaintiff asks the Court to adjudicate all remedies through Monetary Relief Class.

25.     Collectively, the Injunctive Relief Class, the Monetary Relief Class, and the California Subclass are the "Class."

26.     This action is properly brought as a class action for violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 ("UCL"), California's Consumers Legal Remedies Act, Cal. Civ. Code §1750 ("CLRA"), California's False Advertising Law, Cal. Civ. Code §17500 ("FAL"), and Unjust Enrichment/ Breach of Quasi Contract, for the following reasons:

(a) the proposed Class is so numerous and geographically dispersed throughout the United States that the joinder of all class members is impracticable.  While Plaintiff does not know the exact number and identity of all Class Members, Plaintiff is informed and believes that there are thousands.  The precise number of Class Members can be ascertained through discovery; (b) the disposition of Plaintiff's and proposed Class Members' claims in a class action will provide substantial benefits to both the parties and the Court; (c) the proposed Class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed Class member were infringed or violated in the same fashion; (d) there are questions of law and fact common to the proposed class which predominate over any questions that may affect particular Class Members.  Such common questions of law and fact include, but are not limited to:

(1) Whether Defendant's conduct was unlawful;

(2) Whether Defendant's conduct was unfair;

(3) Whether Defendant's advertising and labeling is likely to mislead the public;

(4) Whether Defendant's conduct was misleading;

(5) Whether Defendant violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 ("UCL");

(6) Whether Defendant violated California's Consumers Legal Remedies Act, Cal. Civ. Code §1750 ("CLRA");

(7) Whether Defendant violated California's False Advertising Law, Cal. Civ. Code §17500 ("FAL");

(8) Whether Defendant received purchase monies from Plaintiff and class members that they unjustly received;

(9) Whether Plaintiff and Class Members have been harmed and the proper measure of relief;

(10) Whether Plaintiff and Class Members are entitled to an award of punitive damages, attorneys' fees and expenses against Defendants; and

(11) Whether, as a result of Defendant's misconduct, Plaintiff and Class Members are entitled to equitable relief, and if so, the nature of such relief;

(e) Plaintiff's claims are typical of the claims of the members of the proposed Class. Plaintiff and Class Members have been injured by the same wrongful practices of Defendant. Plaintiff's claims arise from the same practices and conduct that give rise to the claims of all Class Members and are based on the same legal theories;

(f) Plaintiff will fairly and adequately protect the interests of the Class in that she has no interests antagonistic to those of the other Class Members, and Plaintiff has retained attorneys experienced in consumer class actions and complex litigation as counsel;

(g) A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons: (i) Given the size of individual Class Member's claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions; (ii) This action will promote an orderly and expeditious administration and adjudication of the proposed Class claims, economies of time, effort and resources will be fostered and uniformity of decisions will be insured; (iii) Without a class action, Class Members will continue to suffer damages, and Defendant's violations of law will proceed without remedy while Defendant continues to reap and retain the proceeds of their wrongful conduct; and (iv)

Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude class certification.

27.     Address information for the Class Members may be used for the purpose of providing notice of the class action.

28.     Plaintiff seeks damages and equitable relief on behalf of the Class on grounds generally applicable to the entire proposed Class.

**STATEMENT OF LAW**

**FEDERAL MEAT INSPECTION ACT (FMIA) and POULTRY PRODUCTS INSPECTION ACT (PPIA)**

29.     The United States Department of Agriculture (USDA) is responsible for regulating the safety of meat and poultry products.  The USDA regulates the label statements at issue in this case for the SPAM 25% LESS SODIUM product, and the SPAM LITE product.  A mark of "US Inspected and Approved by Department of Agriculture" is printed on their labels.

30.     Congress enacted the Poultry Products Inspection Act ("PPIA") and the Federal Meat Inspection Act ("FMIA") to ensure, among other things, that poultry and meat products are properly labeled. 21 U.S.C. § 602, § 451.  Under the PPIA and the FMIA, meat and poultry products cannot be sold if the product has labeling that is false or misleading. U.S.C. § 457(c), § 607(d); 9 C.F.R. § 381.129(a), § 317.8(a).  In regulating the labeling of meat and poultry products, Congress has stated that labeling requirements "in addition to, or different than," those set forth under the PPIA and the FMIA may not be imposed by any state.  21 U.S.C. § 467e, § 678.  However, Congress provided that states may, consistent with the requirements set forth under the PPIA and the FMIA, exercise concurrent jurisdiction with the United States Department of Agriculture ("USDA") to prevent

the distribution of poultry and meat products that have labeling that is false or misleading. 21 U.S.C. § 453(h)(1), 601(n)(1).  The states' concurrent jurisdiction has been interpreted to mean that states can impose sanctions for violations of state requirements that are equivalent to the FMIA and the PPIA's requirements.

31.     The PPIA's and FMIA's preemption clauses preclude states from enacting different or additional marking, labelling, packaging, or ingredient requirements but do not expressly preclude state laws regulating false or misleading advertising of products covered under the PPIA and FMIA.

32.     The SPAM Products contain sodium at 580mg, are not healthy because they contain sodium at the level higher than 480mg. 9 CFR § 381.463.  Reasonable consumers are misled that the SPAM Products are healthy.

### 9 CFR § 317.361 and § 381.461 Nutrient Content Claims for Sodium Content

33.     The terms ''reduced sodium,'' ''reduced in sodium,'' ''sodium reduced,'' ''less sodium,'' ''lower sodium,'' or ''lower in sodium'' may be used on the label or in labeling of products, provided that: (i) The product contains at least 25 percent less sodium per reference amount customarily consumed than an appropriate reference product as described in § 317.313(j)(1) and § 381.413(j)(1); and (ii) As required in § 317.313(j)(2) and § 381.413(j)(2) for relative claims: (A) The identity of the reference product and the percent (or fraction) that the sodium differs between the two products are declared in immediate proximity to the most prominent such claim (e.g., ''reduced sodium 'product', 50 percent less sodium than regular 'product' ''); and (B) Quantitative information comparing the level of sodium in the product per labeled serving size with that of the reference product that it replaces is declared adjacent to the most prominent claim or to the nutrition information (e.g., ''sodium content has been lowered from 300 to 150 mg per

serving"). The SPAM Products present (A) and (B) above in not easily legible boldface print in violation of 9 CFR § 381.413(j)(2).

**9 CFR § 317.362 and § 381.462 Nutrient Content Claims for Fat Content**

34.     The terms ''reduced fat,'' ''reduced in fat,'' ''fat reduced,'' ''less fat,'' ''lower fat,'' or ''lower in fat'' may be used on the label or in labeling of products, provided that: (i) The product contains at least 25 percent less fat per reference amount customarily consumed than an appropriate reference product as described in § 317.313(j)(1) and § 381.413(j)(1); and (ii). As required in § 317.313(j)(2) and § 381.413(j)(2) for relative claims: (A) The identity of the reference product and the percent (or fraction) that the fat differs between the two products are declared in immediate proximity to the most prominent such claim (e.g., ''reduced fat—50 percent less fat than our regular 'product' ''); and (B) Quantitative information comparing the level of fat in the product per labeled serving size with that of the reference product that it replaces is declared adjacent to the most prominent claim or to the nutrition information (e.g., ''fat content has been reduced from 8 g to 4 g per serving'').

**9 CFR § 317.313(j)(2), § 381.413(j)(2), and 21 U.S.C. § 601(n)(6): Legible Boldface Print and Conspicuousness**

35.     For products bearing relative claims: (i) the label or labeling must state the identity of the reference product and the percent (or fraction) of the amount of the nutrient in the reference product by which the nutrient has been modified, (e.g., ''50 percent less fat than 'reference product' '' or ''1⁄3 fewer calories than 'reference product' ''); and (ii) This information shall be immediately adjacent to the most prominent claim in easily legible boldface print or type, in distinct

contrast to other printed or graphic matter.  21 U.S.C § 601(n)(6) provides that: "The term "misbranded" shall apply to any carcass, part thereof, meat or meat food product under one or more of the following circumstances:" "(6) if any word, statement, or other information required by or under authority of this chapter to appear on the label or other labeling is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use;"

**9 CFR § 317.363 and § 381.463 Nutrient Content Claims for "healthy"**

36.    The term "healthy," or any other derivative of the term "health," may not be used on the labeling of any meat (poultry) or meat (poultry) food product, provided that "the product shall not contain more than 480 mg of sodium per reference amount customarily consumed, per labeled serving size,"  "The product has a reference amount customarily consumed greater than 30 g or greater than 2 tablespoons (tbsp) and contains 3 g or less of fat per reference amount customarily consumed."

37.    Even if the labels of the SPAM products did not use the terms of "health, healthy, healthful," reasonable consumers would think the SPAM products are healthful.  But, they are not healthful.

**First Cause of Action**
**Violation of California's Unfair Competition Law, California Business and Professions Code § 17200 *et seq.* Unlawful Conduct Prong**
**(By Plaintiff Connie Chong, on Behalf of the Class)**

38.     Plaintiff re-alleges and incorporates by reference the above allegations contained in the paragraphs above as if fully set forth herein.

39.     Defendant violated Cal. Bus. & Prof. Code §17200's prohibition against engaging in an "*unlawful*" business act or practice by selling the SPAM products. The SPAM Products violated 9 CFR § 381.413(j)(2), and 21 U.S.C § 601(n)(6). Under the PPIA and the FMIA, meat and poultry products cannot be sold if the product has labeling that is false or misleading. U.S.C. § 457(c), § 607(d); 9 C.F.R. § 381.129(a), § 317.8(a).

40.     Defendant misleadingly advertises the SPAM Products in its website. Defendant violated Cal. Bus. & Prof. Code §17200's prohibition against engaging in an "*unlawful*" business act or practice by, *inter alia*, making the material misrepresentations regarding the SPAM Products as set forth more fully elsewhere in this Complaint; 1750 *et seq.* (the CLRA); Cal. Bus. & Prof. Code §17500 (false advertising).

41.     Plaintiff seeks equitable relief on behalf of herself and the Class, which relief includes, but is not limited to, the following: restitution; refunding Plaintiff and class members the full amount paid for the SPAM Products; injunctive relief for an order enjoining Defendant from falsely marketing and advertising the SPAM Products; punitive damages; costs and expenses, including attorneys' and expert fees; interest; and any additional relief that this Court determines to be necessary or appropriate to provide complete relief to Plaintiff and the Class.  Plaintiff seeks public injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public.  Class certification is not required for "public" injunctive relief under the UCL, FAL, and CLRA. (see *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).)

//

//

## Second Cause of Action

## Violation of California's Unfair Competition Law, California Business and Professions Code § 17200 *et seq.* Unfair Conduct Prongs
## (By Plaintiff Connie Chong, on Behalf of the Class)

42.     Plaintiff re-alleges and incorporates by reference the above allegations contained in the paragraphs above as if fully set forth herein.

43.     The foregoing conduct also constitutes "*unfair*" business acts and practices within the meaning of Cal. Bus. & Prof. Code §17200.  Defendant's practices offend public policy and are unethical, oppressive, unscrupulous and violate the laws stated.  Defendant's conduct caused and continues to cause substantial injury to Plaintiff and Class Members.

44.     Defendant's labeling and advertising of the SPAM Products is likely to mislead reasonable consumers about the total amount of sodium in the SPAM Products.

45.     Defendant either knew or reasonably should have known that the claims on the labels of the SPAM Products were likely to mislead reasonable consumers.

46.     In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to sell the SPAM Products through unlawful, and unfair acts and practices and to commence a corrective advertising and labeling campaign.

47.     Plaintiff seeks equitable relief on behalf of herself and the Class, which relief includes, but is not limited to, the following: restitution; refunding Plaintiff and class members the full amount paid for the SPAM Products; injunctive relief for an order enjoining Defendant from falsely marketing and advertising the SPAM Products; punitive damages; costs and expenses, including attorneys' and expert fees; interest; and any additional relief that this Court determines to be necessary or appropriate to provide complete relief to Plaintiff and the Class.  Plaintiff seeks public injunctive relief that has the primary purpose and effect of prohibiting

unlawful acts that threaten future injury to the general public. Class certification is not required for "public" injunctive relief under the UCL, FAL, and CLRA. (see *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).)

## Third Cause of Action
### Violation of California's False and Misleading Advertising Law, California Business and Professions Code § 17500 *et seq.*
### (By Plaintiff Connie Chong, on Behalf of the Class)

48.    Plaintiff re-alleges and incorporates by reference the above allegations contained in the paragraphs above as if fully set forth herein.

49.    California Business & Professions Code §17500 prohibits various deceptive practices in connection with the dissemination in any manner of representations which are likely to deceive and/or mislead members of the public to purchase products and services such as the SPAM Products.

50.    Defendant disseminated, through common advertising, misleading statements about the SPAM Products and Defendant knew or should have known that the SPAM Products' label did not conform to the advertisements or representations regarding the SPAM Products. Plaintiff and the Class relied upon the advertisements and misrepresentations to their detriment.

51.    As alleged herein, Defendant, in its labeling and advertising of the SPAM Products, makes misleading advertising claim, as it mislead consumers as to the total amount of sodium in the SPAM Products.

52.    In reliance on these misleading advertising claims, Plaintiff and the members of the California Subclass purchased and used the SPAM Products without the knowledge that the products contain a substantial amount of total sodium.

53.    Defendant knew or should have known that the labeling and marketing of the SPAM Products was likely to mislead consumers.

54.     Plaintiff seeks equitable relief on behalf of herself and the Class, which relief includes, but is not limited to, the following: restitution; refunding Plaintiff and class members the full amount paid for the SPAM Products; injunctive relief for an order enjoining Defendant from falsely marketing and advertising the SPAM Products; punitive damages; costs and expenses, including attorneys' and expert fees; interest; and any additional relief that this Court determines to be necessary or appropriate to provide complete relief to Plaintiff and the Class.  Plaintiff seeks public injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public.  Class certification is not required for "public" injunctive relief under the UCL, FAL, and CLRA. (see *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).)

**Fourth Cause of Action**

**Violation of California's Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.***

**(By Plaintiff Connie Chong, on Behalf of the Class)**

55.     Plaintiff re-alleges and incorporates by reference the above allegations contained in the paragraphs above as if fully set forth herein.

56.     This cause of action arises under the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750, *et seq.*  Plaintiff is a consumer as defined by Cal. Civ. Code §1761(d).  Defendant's SPAM Products constitute "products" as defined by Cal. Civ. Code §1761(a) and (b).  At all times relevant hereto, Defendant constituted "persons" as that term is defined in Cal. Civ. Code §1761(c), and Plaintiff's and Class Members' purchases of the SPAM Products constitute "transactions," as that term is defined in Cal. Civ. Code §1761(e).

57.     Defendant violated and continues to violate the CLRA by engaging in the following deceptive practices specifically proscribed by Cal. Civ. Code §1770(a),

in transactions with Plaintiff and Class Members that were intended to result or which resulted in the sale of the SPAM Products to consumers:

(a) In violation of Cal. Civ. Code §1770(a)(5), Defendant's acts and practices constitute misrepresentations that the SPAM Products in question have characteristics, benefits or uses which they do not have;

(b) In violation of Cal. Civ. Code §1770(a)(7), Defendant misrepresented that the SPAM Products are of particular standard, quality and/or grade, when they are of another; and

(c) In violation of Cal. Civ. Code §1770(a)(9), Defendant advertised the SPAM Products with the intent not to sell them as advertised or represented.

(d) In violation of Cal. Civ. Code §1770(a)(16), Defendant represented that "the subject of a transaction has been supplied in accordance with a previous representation when it has not."

58.    Defendant's representations misleading and in violation of the CLRA.

59.    In addition, pursuant to Civil Code §1780(a)(2), Plaintiff is entitled to, and therefore seek, a Court order enjoining the above-described wrongful acts and practices that violate Cal. Civ. Code §1770:

(1) enjoining Defendant from continuing to engage in the deceptive practices described above;

(2) requiring Defendant to provide public notice of the true nature of the SPAM Products; and

(3) enjoining Defendant from such deceptive business practices in the future. Plaintiff seeks ***public injunctive relief*** that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public.  Class certification is not required for "public" injunctive relief under the UCL, FAL, and CLRA. (see *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017).)

60.     Plaintiff and the Class are also entitled to recover attorneys' fees, costs, expenses and disbursements pursuant to Cal. Civ. Code §§1780 and 1781.

61.     Pursuant to section 1782 of the CLRA, Plaintiff is hereby notifying Defendant in writing of its particular violations of section 1770 of the CLRA and is demanding, among other actions, that Defendant cease marketing the SPAM Products as set forth in detail above and correct, repair, replace, or otherwise rectify the SPAM Products that are in violation of section 1770 as set forth in detail above. (Exhibit 1.)  If Defendant fails to respond to Plaintiff's demand within 30 days of this notice, pursuant to section 1782 of the CLRA, Plaintiff will amend this Class Action Complaint to request, in addition to the above relief, statutory damages, actual damages, punitive damages, interest, and attorneys' fees, pursuant to sections 1780 and 1781.

**Fifth Cause of Action**

**Unjust Enrichment**

**(By Plaintiff, on Behalf of the Class)**

62.     Plaintiff re-alleges and incorporates by reference the above allegations contained in the paragraphs above as if fully set forth herein.

63.     Plaintiff brings this claim for unjust enrichment on behalf of the Class.

64.     As a direct and proximate result of Defendant's acts set forth herein, Defendant has been unjustly enriched.

65.     As a result of Defendant's misleading labeling, advertising, marketing, and sales of the SPAM Products, Defendant unjustly enriched itself at the expense of Plaintiff and the Class members, through Plaintiff's and the Class members' payment of the purchase price for the products.

66.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the

Class members, in light of the fact that the SPAM Products that Plaintiff and the Class members purchased were not what Defendant purported them to be.  Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class members for the monies paid to Defendant for the SPAM Products.

67.     Plaintiff and the Class members seek restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits, and compensation Defendant obtained from its improper conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court enter a judgment against Defendant that:

1.     This action be certified and maintained as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and certify the proposed Class as defined, appointing Plaintiff as representatives of the Class, and appointing the attorneys and law firms representing Plaintiff as counsel for the Class;

2.     Awards compensatory, statutory and/or punitive damages.

3.     Awards Plaintiff and Class Members the costs of this action, including reasonable attorneys' fees and expenses;

4.     Orders Defendant to immediately cease its wrongful conduct as set forth above; enjoins Defendant from continuing to falsely market and advertise, conceal material information, and conduct business via the unlawful and unfair business acts and practices complained of herein; orders Defendant to engage in a corrective notice campaign, and requires Defendant to reimburse to Plaintiff and all Class Members the purchase price paid for the SPAM Products;

5.     Awards equitable monetary relief, including restitution and disgorgement of all ill-gotten gains, and the imposition of a constructive trust upon, or otherwise

restricting the proceeds of Defendant's ill-gotten gains, to ensure that Plaintiff and Class Members have an effective remedy;

6.       Awards pre-judgment and post-judgment interest at the legal rate; and

7.       Such further legal and equitable relief as this Court may deem just and proper.

**JURY TRIAL REQUESTED**

Plaintiff demands a trial by jury on all issues so triable.

DATED: December 30, 2019                          LAW OFFICE OF JUAN HONG

/s/ Juan Hong
JUAN HONG
4199 Campus Drive Suite 550
Irvine, CA 92612
Telephone: (949) 509-6505
Fax: (949) 335-6647

21 (COMPLAINT)

1

## DECLARATION OF CONNIE CHONG PURSUANT TO CALIFORNIA

2

## CIVIL CODE § 1780(d)

3

4

I, Connie Chong, declare as follows:

5

6

1.     I am a plaintiff in the above-entitled action.

7

2.     Defendant Hormel Foods Corp. has done and is doing business in the

8

Central District of California.  Such Business includes the distributing, marketing,

9

labeling, packaging and sale of the SPAM Products.  Furthermore, I purchased the

10

SPAM Product in Los Angeles, California.

11

      I declare under penalty of perjury under the laws of the State of California

12

that the foregoing is true and correct.

13

14

      Executed this 30th day of December 2019, at Los Angeles, California.

15

16

DATED: December 30, 2019

17

18

Connie Chong

19

20

21

22

23

24

25

26

27

28

21 (COMPLAINT)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25 # EXHIBIT 1.
26
27
28

Juan Hong, A Law Corp, Law Office of Juan Hong
4199 Campus Drive Suite 550, Irvine, CA 92612
Telephone: (949) 509-6505, Fax: (949) 335-6647

December 30, 2019

Hormel Foods Corp
1 Hormel Place
Austin, MN 55912

      RE: *Connie Chong v. Hormel Foods Corp.*

Dear Hormel Foods Corp.:

      Our law firm represents Connie Chong and all other consumers similarly situated in an action against Hormel Foods Corp. ("Defendant") arising out of, *inter alia*, misrepresentations by Defendant to consumers.

      Plaintiff's claim is essentially that, because defendant's labels of SPAM 25% LESS SODIUM and SPAM LITE ("SPAM Products") do not comply with state and federal requirements regarding the quantitative information, she could not see or did not understand the quantitative information, and therefore was misled by the unlawful packaging and purchased the product based thereon. Defendant's products are misbranded and unmarketable. Plaintiff was misled as a result of the misbranding and suffered. Defendant's advertisements of the SPAM Products are misleading.

      Plaintiff Connie Chong and others similarly situated purchase the SPAM Products unaware that they are not healthy due to high level of sodium. Thus, the statements are misleading and reasonably likely to deceive the public. The full claims, including the facts and circumstances surrounding these claims, are detailed in the Class Action Complaint.

      Defendant's representations are misleading and constitute unfair methods of competition and unlawful, unfair, and fraudulent acts or practices, undertaken by Defendant with the intent to induce the consuming public to purchase the SPAM Products.

      Defendant violated and continues to violate the Consumers Legal Remedies Act (CLRA) by engaging in the following deceptive practices specifically proscribed by Cal. Civ. Code §1770(a), in transactions with Plaintiff and Class Members that were intended to result or which resulted in the sale or lease of goods or services to consumers:

1

(a) In violation of Cal. Civ. Code §1770(a)(5), Defendant's acts and practices constitute misrepresentations that the SPAM Products have characteristics, benefits or uses which they do not have;

(b) In violation of Cal. Civ. Code §1770(a)(7), Defendant misrepresented that the SPAM Products are of particular standard, quality and/or grade, when they are of another; and

(c) In violation of Cal. Civ. Code §1770(a)(9), Defendant advertised the SPAM Products with the intent not to sell them as advertised or represented.

(d) In violation of Cal. Civ. Code §1770(a)(16), Defendant represented that "the subject of a transaction has been supplied in accordance with a previous representation when it has not."

    While the Complaint constitutes sufficient notice of the claims asserted, pursuant to California Civil Code § 1782, we hereby demand on behalf of our client and all others similarly situated that Defendants immediately correct and rectify this violation of California Civil Code § 1770 by ceasing the misleading marketing campaign and ceasing dissemination of misleading information as described in the enclosed Complaint.  In addition, Defendants should offer to refund the purchase price to all consumer purchasers of the SPAM Products, plus reimbursement for interest, costs, and fees.

    Plaintiff will, after 30 days from the date of this letter, amend the Complaint without leave of Court, as permitted by California Civil Code § 1782, to include claims for actual and punitive damages (as may be appropriate) if a full and adequate response to this letter is not received.  These damage claims also would include claims under the Consumers Legal Remedies Act.  Thus, to avoid further litigation, it is in the interest of all parties concerned that Defendants address these violations immediately.

    Defendants must undertake all of the following actions to satisfy the requirements of California Civil Code § 1782(c):

(1)    Identify or make a reasonable attempt to identify purchasers of the SPAM Products for the three years prior to January of 2020;

(2)    Notify all such purchasers so identified that upon their request, Defendant will offer an appropriate remedy for its wrongful conduct, which can include a full refund of the purchase price paid for the SPAM Products, plus interest, costs fees, by mailing them a notice via certified mail.  Provide this office with proof that you delivered the notice to everyone referenced;

(3)    Undertake (or promise to undertake within a reasonable time if it cannot be done immediately) the actions described above for all the SPAM Products purchasers who so request; and

(4)     Cease from representing to consumers that SPAM Products provides the benefits described in the aforementioned Defendant's labels and advertisements, when there is no reasonable basis for so claiming, as more fully described in the enclosed Complaint.

We await your response.

<div style="margin-left:50%">

Sincerely yours,
/s/ Juan Hong
Juan Hong
LAW OFFICE OF JUAN HONG
4199 Campus Drive Suite 550
Irvine, CA 92612

</div>