UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV19-10944 JAK (PLAx) | Date | April 13, 2021 |
| Title | Connie Chong v. Hormel Foods Corp. et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANT HORMEL FOODS CORP.'S MOTION TO DISMISS (DKT. 12)**

I. **Introduction**

On December 30, 2019, Connie Chong brought this putative class action against Hormel Foods Corporation ("Hormel"). Dkt. 1. The Complaint advances five causes of action: (i) unlawful conduct in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (ii) unfair conduct in violation of UCL; (iii) violation of California's False and Misleading Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500; (iv) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750; and (v) unjust enrichment. Dkt. 1 at 4. This action arises out of labeling on two SPAM products and related advertisements on the SPAM website.

On January 29, 2020, Hormel filed Defendant's Motion to Dismiss (the "Motion" (Dkt. 12)) and Defendant's Request for Judicial Notice in Support of Defendant's Motion to Dismiss (the "Hormel RJN" (Dkt. 12-4)). On February 18, 2020, Plaintiff filed an opposition to the Motion (the "Opposition"). Dkt. 19. On March 4, 2020, Hormel filed a reply (the "Reply"). Dkt. 21. On April 17, 2020, the Motion was taken under submission pursuant to the Continuity of Operations Plan implemented by the Central District of California in response to the COVID-19 pandemic. *See* Dkt. 24.

For the reasons stated in this Order, the Motion is **GRANTED**.

II. **Request for Judicial Notice**

    A.     Legal Standards

Fed. R. Evid. 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." More specifically, a court "may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 789 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds*, *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-10944 JAK (PLAx) | Date | April 13, 2021 |
|---|---|---|---|
| Title | Connie Chong v. Hormel Foods Corp. et al. | | |

104 (1991)). Such matters of public record include "documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). "'[R]ecords and reports of administrative bodies' are within this category." *Shalikar v. Asahi Beer U.S.A., Inc.*, No. LA CV 17-02713 JAK (JPRx), 2017 WL 9362139, at *2 (C.D. Cal. Oct. 16, 2017) (quoting *Mack*, 789 F.2d at 1282) (alteration in original). "Similarly, judicial notice has been taken of product labeling and packaging when a complaint expressly refers to them and their authenticity is not disputed." *Id.* Administrative approvals of the labels at issue are also appropriate for judicial notice in relation to a motion to dismiss under Rule 12(b)(6). *See id.* (granting judicial notice of U.S. Treasury Alcohol and Tobacco Tax and Trade Bureau certificates of label approval).

A motion to dismiss is generally "limited to the [contents of] the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Cs., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). In considering materials incorporated into the complaint, the court may review the full text of a document even if the complaint refers to or quotes only part of it. *Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997). A court may also consider "evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

  B. Application

The Hormel RJN requests judicial notice of four exhibits attached to the Declaration of Tyler Young (Dkt. 12-3): (i) Exhibit A: A copy of the product label for SPAM 25% Less Sodium; (ii) Exhibit B: A copy of the product label for SPAM Lite; (iii) Exhibit C: Hormel's Form 7234-1 Application for Approval of the SPAM 25% Less Sodium label; and (iv) Exhibit D: Hormel's Form 7234-1 Application for Approval of the SPAM Lite label. Dkt. 12-4 at 2.

Hormel argues that judicial notice is appropriate because there is no dispute as to the authenticity of the exhibits, and both product labels and administrative documents are appropriate for judicial notice. Dkt. 12-4 at 2-3. Exhibits C and D are applications for approval of the SPAM Products labels submitted to the United States Department of Agriculture ("USDA") Food Safety and Inspection Service ("FSIS"). Plaintiff does not dispute the authenticity of these documents and does not object to judicial notice. Because the product labels are incorporated by reference into the Complaint and the applications for product label approval are public records of facts that are not in dispute -- i.e., that Hormel applied for approval of these labels -- judicial notice is appropriate. Therefore, the Hormel RJN is **GRANTED**.

**III.** **Factual and Procedural Background**

  A. Parties

The Complaint alleges that Connie Chong is a California resident and a consumer of SPAM products. Dkt. 1 ¶ 19. The Complaint alleges that Hormel is a Delaware corporation with its principal place of business in Minnesota. *Id.* ¶ 20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-10944 JAK (PLAx) | Date | April 13, 2021 |
|---|---|---|---|
| Title | Connie Chong v. Hormel Foods Corp. et al. | | |

      B.      Allegations in the Complaint

              1.      <u>Alleged Labeling and Advertisement</u>

The Complaint alleges that SPAM is a canned meat and poultry product manufactured, marketed and sold by Hormel. Dkt. 1 ¶ 3. The Complaint alleges that the Plaintiff made several purchases of two varieties of SPAM -- SPAM 25% Less Sodium and SPAM Lite ("the SPAM Products") – each for about $3-4. *Id.* ¶ 2. The Complaint alleges that Hormel made and continues to make four misleading claims related to the SPAM Products: one on the label of SPAM 25% Less Sodium, one on the label of SPAM Lite, and two on Hormel's website related to each product (the "Website").[1] *See id.* ¶¶ 4, 7-8.

The Complaint alleges that the labeling on the SPAM Products includes prominent claims about the fat and sodium content of the SPAM Products that mislead reasonable consumers. Dkt. 1 ¶¶ 4-5. *First*, the Complaint alleges that Hormel labels SPAM 25% Less Sodium with the prominent claim "25% Less Sodium." *Id.* ¶ 4. The Complaint alleges that consumers "perceive" this claim to mean that SPAM 25% Less Sodium is "low in sodium and healthy." *Id. Second*, the Complaint alleges that Hormel labeled SPAM Lite with the prominent claim "50% Less Fat, 25% Less Sodium, and 33% Fewer Calories." *Id.* The Complaint alleges that consumers "perceive" this claim to mean that SPAM Lite is "low in sodium and fat to be healthy." *Id.*

The Complaint alleges that the Website includes advertising statements (the "Website Advertisements") that also "mislead reasonable consumers." *Id.* ¶¶ 7-8. *First*, the Complaint alleges that, "at all relevant times," the Website included an advertisement related to SPAM 25% Less Sodium:[2]

> Having to cut back on sodium can take a lot of tasty things out of the equation. Fortunately, SPAM® Less Sodium is not one of those things. It provides the same delicious SPAM® Classic flavor with 25% Less Sodium. There's no sacrifice with this meat treat!

*Id.* ¶ 8. The Complaint alleges that this advertising statement (the "Less Sodium Website Advertisement") "mislead[s] reasonable consumers" to believe that SPAM 25% Less Sodium is "healthful." *Id.*

*Second*, the Complaint alleges that, "at all relevant times," the Website included an advertisement related to SPAM Lite:[3]

> Heavy on the flavor, light on the other stuff. This variety offers the scrumptiousness of SPAM® Classic with 33% less calories, 50% less fat and 25% less sodium, which means you can enjoy the taste you love more often. It's the perfect SPAM® variety for swimsuit season.

Dkt. 1 ¶ 7. The Complaint alleges that this advertising statement (the "Lite Website Advertisement") "mislead[s] reasonable consumers" to believe that SPAM Lite is "healthful." *Id.* The Complaint alleges that the Plaintiff saw both the Less Sodium Website Advertisement and the Lite Website Advertisement

---

[1] http://www.spam.com
[2] http://www.spam.com/varieties/spam-less-sodium
[3] http://www.spam.com/varieties/spam-Lite

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-10944 JAK (PLAx) | Date | April 13, 2021 |
|---|---|---|---|
| Title | Connie Chong v. Hormel Foods Corp. et al. | | |

"during the relevant times." *Id.* ¶¶ 7-8.

The Complaint further alleges that the labeling on the SPAM Products includes "Nutrition Facts." *Id.* ¶ 5. The Complaint alleges that certain "Nutrition Facts" disqualify the SPAM Products from ones about which health claims can be made with respect to their sodium and fat content. *Id.* ¶ 5. Thus, the Complaint alleges that the SPAM Products each contains 580mg of sodium, but products exceeding 480mg of sodium are ones disqualified from associated health claims about their sodium content. *Id.* ¶¶ 5, 36 (citing 9 CFR §§ 317.363, 381.463). Similarly, the Complaint alleges that SPAM 25% Less Sodium and SPAM Lite contain 16g and 8g of fat respectively, but products exceeding 3g of fat are ones disqualified from associated health claims about their fat content. *Id.* ¶¶ 5, 36 (citing 9 CFR §§ 317.363, 381.463).

The Complaint alleges that the Plaintiff did not read the "Nutrition Facts" on the side of the labels of the SPAM Products. *Id.* ¶ 9. Specifically, the Complaint alleges that the Plaintiff did not read statements containing quantitative information about the amount of sodium and fat in the SPAM Products and the comparison of those amounts to what is in SPAM Classic. *Id.* The Complaint alleges that these statements are "not prominently placed thereon with such conspicuousness . . . and [are] not easily legible" in violation of state and federal requirements. *Id.* ¶¶ 9-10. "Plaintiff's claim is essentially that, because the defendant's labels did not comply with state and/or federal requirements regarding the quantitative information, [Plaintiff] could not see or did not understand the quantitative information, and therefore was misled by the unlawful packing and purchased the product thereon." *Id.* ¶ 10.

Based on the foregoing, the Complaint alleges that because Plaintiff did not read and understand the quantitative information under "Nutrition Facts," the Plaintiff relied on and was misled by the "25% Less Sodium" and "50% Less Fat, 25% Less Sodium, and 33% Fewer Calories" claims that were prominently displayed on the product labels and the advertisements on the Website. *Id.* ¶ 10. The Complaint alleges that the Plaintiff would not have purchased the SPAM Products but for the allegedly misleading claims and suffered a corresponding economic injury. *Id.* ¶ 9.

   2. <u>Claims for Relief</u>

The Complaint advances two causes of action under Cal. Bus. & Prof. Code § 17200 for unlawful conduct and for unfair conduct. *First*, the Complaint alleges that the labeling of the SPAM Products violates Cal. Bus. & Prof. Code § 17200 because it is "unlawful" conduct given that the labels violate the requirements of 9 CFR § 381.413(j)(2) and 21 U.S.C. § 601(n)(6). *Id.* ¶ 39. The Complaint further alleges that the advertisements on the Website constitute "unlawful" conduct and violate Cal. Bus. & Prof. Code § 17200 because Hormel makes "material misrepresentations regarding the SPAM Products." *Id.* ¶ 40. *Second*, the Complaint alleges that the "labeling and advertising of the SPAM Products is likely to mislead reasonable consumers regarding the total amount of sodium in the SPAM Products" in violation of the prohibition on "unfair" business conduct under Cal. Bus. & Prof. § 17200. *Id.* ¶¶ 43-44.

The Third Cause of Action alleges that Hormel made "misleading statements" through advertising and "knew or should have known" that the SPAM Products did not conform to these representations, thereby violating Cal. Bus. & Prof. Code § 17500. *Id.* ¶¶ 49-50.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-10944 JAK (PLAx) | Date | April 13, 2021 |
|---|---|---|---|
| Title | Connie Chong v. Hormel Foods Corp. et al. | | |

In the Fourth Cause of Action under the CLRA, the Complaint alleges that Hormel violated Cal. Civ. Code § 1750 by misrepresenting the characteristics of the SPAM products, "advertis[ing] the SPAM Products with the intent to sell them not as advertised[,]" and representing that the SPAM products supplied were "in accordance with previous representation[s]." *Id.* ¶¶ 56-57.

Finally, the Fifth Cause of Action alleges that Hormel was unjustly enriched as a result of this allegedly misleading labeling and advertising. *Id.* ¶ 65.

The Complaint requests the following: (i) a class of consumers be certified under Fed. R. Civ. P. 23(b)(2) and (b)(3), (ii) compensatory, statutory and/or punitive damages be awarded, (iii) reasonable attorney's fees and costs be awarded, (iv) injunctive relief be entered against Hormel barring its use of the allegedly misleading labels and advertisements, (v) equitable relief, (vi) pre-judgment and post-judgment interest at the legal rate, and (vii) such other appropriate relief as determined by the Court. *Id.* at 20-21.

    C.    Facts Judicially Noticed

As noted, the request for judicial notice by Hormel is granted as to four exhibits. Exhibit A is a copy of the label for SPAM 25% Less Sodium, reproduced below. Ex. A to Hormel RJN, Dkt. 12-5 at 2.



SPAM 25% Less Sodium (Dkt. 12-5 at 2)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-10944 JAK (PLAx) | Date | April 13, 2021 |
|---|---|---|---|
| Title | Connie Chong v. Hormel Foods Corp. et al. | | |

Exhibit B is a copy of the product label for SPAM Lite, reproduced below. Ex. B to Hormel RJN, Dkt. 12-5 at 4.

**SPAM Lite (Dkt. 12-5 at 4)**



Exhibit C is a copy of an application for approval of the SPAM 25% Less Sodium label. Ex. C to Hormel RJN, Dkt. 12-5 at 6. The application is dated February 19, 2013 and was approved by the United States Department of Agriculture ("USDA") on March 12, 2013. *Id.*

Exhibit D is a copy of an application for approval of the SPAM Lite label. Ex. D to Hormel RJN, Dkt. 12-5 at 12. The application is dated February 19, 2013 and was approved by the USDA on March 20, 2013. *Id.*

**IV.     Analysis**

      A.     Product Label Statements

            1.     <u>Preemption</u>

                  a)     Legal Standards

Federal law preempts state law where state law "interferes with or is contrary to federal law." *Gade v. Nat'l Solid Wastes Management Ass'n*, 505 U.S. 88, 108 (1992); *see* U.S. Const. art. VI, cl. 2. Federal preemption of state laws "may be either expressed or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Id.* at 98 (internal quotation marks omitted). In determining whether federal law preempts state law, "[t]he purpose of Congress is the ultimate touchstone." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quoting *Retail Clerks Int'l Ass'n, Loc. 1625, AFL-CIO v. Schermerhorn*, 375 U.S. 96, 103 (1963)) (alteration in original).

"Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008). However, express preemption "does not immediately end the inquiry" because courts must determine "the substance and scope of Congress' displacement of state law." *Id.* There is a presumption "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-10944 JAK (PLAx) | Date | April 13, 2021 |
|---|---|---|---|
| Title | Connie Chong v. Hormel Foods Corp. et al. | | |

Congress." *Lohr*, 518 U.S. at 485 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). "[W]hen the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors preemption.'" *Altria Grp., Inc.*, 555 U.S. at 77 (citing *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)).

"Absent explicit pre-emptive language," federal law may impliedly preempt state law "where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," *Gade*, 505 U.S. at 98 (quoting in part *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982)) (internal quotation marks omitted), "where 'compliance with both federal and state regulations is a physical impossibility,'" *id.* (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963)), "or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

To determine whether state law claims are preempted, courts "must consider the theory of each claim and determine whether the legal duty that is the predicate of that claim is inconsistent with the federal regulations." *Metrophones Telecommunications, Inc. v. Glob. Crossing Telecommunications, Inc.*, 423 F.3d 1056, 1075 (9th Cir. 2005) (quoting in part *Cipollone v. Liggett Grp.*, Inc., 505 U.S. 504, 505 (1992)) (internal quotations marks omitted).

In 1906, Congress enacted the Federal Meat Inspection Act ("FMIA") to ensure that "that the health and welfare of consumers be protected by assuring that meat and meat food products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged." 21 U.S.C. § 602. The FMIA is administered by the USDA and its FSIS. *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 456 (2012). Although the U.S. Food and Drug Administration ("FDA") has the responsibility to ensure that "foods are safe, wholesome, sanitary, and properly labeled," meat and meat products are exempted from FDA review to the extent they are regulated under the FMIA. *Barnes v. Campbell Soup Co.*, No. C 12-05185 JSW, 2013 WL 5530017, at *6 (N.D. Cal. July 25, 2013) (citing 21 U.S.C. §§ 392(a), 393(b)(2)(A)).

The FMIA contains an express preemptive clause that is relevant in this action:

> Marking, labeling, packaging, or ingredient requirements in addition to, or different than, those made under this chapter may not be imposed by any State or Territory or the District of Columbia with respect to articles prepared at any establishment under inspection in accordance with the requirements under subchapter I of this chapter . . . .

21 U.S.C. § 678. This preemptive clause of the FMIA "sweep[s] broadly" and prevents "impermissibly cramped reading[s]" of its labeling provision. *Del Real, LLC v. Harris*, 966 F. Supp. 2d 1047, 1064 (E.D. Cal. 2013) (citing *Nat'l Meat Ass'n*, 565 U.S. at 459) (internal quotation marks omitted).

The FMIA preempts state law that imposes marking, labeling, packaging or ingredient requirements that are in addition to or different from the requirements imposed under the FMIA. *Barnes*, 2013 WL 5530017 at *5 (citing 21 U.S.C. § 678). "A state requirement is in addition to or different from federal requirements if it is not equivalent or parallel." *Meaunrit v. ConAgra Foods Inc.*, No. C 09-02220 CRB, 2010 WL 2867393, at *5 (N.D. Cal. July 20, 2010) (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-10944 JAK (PLAx) | Date | April 13, 2021 |
|---|---|---|---|
| Title | Connie Chong v. Hormel Foods Corp. et al. | | |

Where the USDA pre-approves a label under the FMIA, claims under California law are preempted to the extent they are based on the allegation that the challenged labels are false or misleading. *See, e.g. Barnes*, 2013 WL 5530017, at *5 (UCL, FAL, and CLRA state-law claims preempted by FMIA); *Brower v. Campbell Soup Company*, 243 F. Supp. 3d 1124, 1129 (S.D. Cal. 2017) (same); *ConAgra Foods Inc.*, 2010 WL 2867393, at *6-*8 (UCL and CLRA claims preempted); *Meaunrit v. The Pinnacle Foods Grp., LLC*, No. C 09-04555 CW, 2010 WL 1838715, at *7, *9 (N.D. Cal. May 5, 2010) (same).

        b)       Application

In support of the Motion, Hormel argues that the FMIA preempts the Plaintiff's claims because "the USDA specifically approved the labels [the] Plaintiff challenges." Dkt. 12-1 at 21. The FMIA expressly prohibits the sale of products with "false or misleading labels." *Brower*, 243 F. Supp. 3d at 1128 (citing 21 U.S.C. § 607(d)). Before a label may be used on a meat product, the proposed statements and information on the label must be reviewed and approved by the FSIS to ensure that they are neither false nor misleading. *ConAgra Foods Inc.*, 2010 WL 2867393, at *6. This review includes comparative claims, absolute claims, and technical compliance, *e.g.,* font size. *See, e.g.*, 9 C.F.R. § 317.313(j)(1) (requiring products with comparative claims to refer appropriately to another product); 9 C.F.R. § 317.313(j)(2)(ii) (font size and placement requirements for comparative claims); 9 C.F.R. § 317.313(j)(2)(iv) (requiring a product with a comparative claim to include quantitative information); 9 C.F.R. § 317.363(b) (nutrient requirements for a product to make a "health" claim); 9 C.F.R. § 317.361 (same for "low sodium" claims); 9 C.F.R. § 317.362 (same for "low fat" claims).

On February 19, 2013, Hormel submitted an Application for Approval of Labels, Marking or Device for the SPAM 25% Less Sodium product label to the USDA FSIS. Dkt. 12-1 at 17; Dkt. 12-5 at 6. The application included the following: (i) the size of the area of the principal display; (ii) the total size of the area of available labeling space; (iii) the proposed nutritional claim; and (iv) a sketch of the SPAM 25% Less Sodium label to be used. Dkt. 12-5 at 6-10. On March 12, 2013, the USDA FSIS approved Hormel's application. *Id.* at 6. The sketch label included on the application is the same as the SPAM 25% Less Sodium label currently used. *Id*. at 2, 10.

On February 19, 2013, Hormel also submitted an Application for Approval of Labels, Marking or Device for SPAM Lite product label to the USDA FSIS. Dkt. 12-1 at 17; Dkt. 12-5 at 12. The application included (i) the size of the area of the principal display; (ii) the total size of the area of available labeling space; (iii) the proposed nutritional claim; and (iv) a sketch of the SPAM Lite label to be used. Dkt. 12-5 at 12-16. Hormel's application was approved by the USDA FSIS on March 20, 2013. *Id*. at 12. The sketch label included on the application is the same as the SPAM Lite label at issue in this action. *Id*. at 4, 16.

The Complaint alleges that the labels on the SPAM Products are misleading for two reasons: (i) consumers construe the "25% Less Sodium" and "50% Less Fat, 25% Less Sodium, and 33% Fewer Calories" claims on the labels as the SPAM Products are "low in sodium," "low in fat," and "healthy;" and (ii) quantitative information on the labels is not conspicuous. Dkt. 1 ¶10. Both of these claims arise from matters within the scope of FSIS review. Therefore, both are preempted by the FMIA.

As noted, before a party may distribute a meat product with a label, the FSIS must review and determine that the label is neither false nor misleading. *See Barnes*, 2013 WL 5530017, at *5. Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-10944 JAK (PLAx) | | Date | April 13, 2021 |
|---|---|---|---|---|
| Title | Connie Chong v. Hormel Foods Corp. et al. | | | |

effectively acknowledges that the FSIS reviewed the comparative claims stated above and approved them for use. *See* Dkt. 19 at 20. Nevertheless, Plaintiff argues that these claims remain misleading. *Id.* at 11. A determination by the Court or a jury in this case that the "25% Less Sodium" and "50% Less Fat, 25% Less Sodium, and 33% Fewer Calories" claims are false or misleading under California law would directly contradict the FSIS's prior determination. Therefore, the state-law claims are preempted by the FMIA. *See, e.g.*, *Barnes*, 2013 WL 5530017, at *5 (a label cannot be false or misleading because the FSIS "previously approved of [defendant's] label"); *Trazo v. Nestle USA, Inc.*, No. 5:12-CV-2272 PSG, 2013 WL 4083218 at *8 (N.D. Cal. Aug. 9, 2013) (FSIS approval of a label "indicat[ed] that [the labels] have already been reviewed and deemed to not be false or misleading"); *ConAgra Foods Inc.*, 2010 WL 2867393, at *7 ("Because the pre-approval process includes a determination of whether the labeling is false and misleading . . . the plaintiff's state causes of action are preempted by federal law.").

Turning to the quantitative information claims, an FSIS review includes an analysis of any nutritional claims made on the sketch label and a determination that the label satisfies the technical requirements of the FMIA. *See* 9 C.F.R. §§ 317.313, 317.362, 317.363. For product labels, like those on the SPAM Products at issue here, which include relative claims, the regulations require that the label contain "[c]lear and concise quantitative information comparing the amount of the subject nutrient in the product per labeled serving size with that in the reference product[.]" 9 C.F.R. § 317.313(j)(2)(iv). Thus, Hormel was required under the FMIA to include the quantitative information as to both SPAM 25% Less Sodium and SPAM Lite and the corresponding comparisons to SPAM Classic, which is the reference product.

The approval by the FSIS of the placement of such quantitative information included a determination that the information satisfied the technical requirements of the FMIA, including font size and location. *See* 9 C.F.R. § 317.313(g) ("[l]abeling information . . . whose type size is not otherwise specified" must be no less than 1/16 inch in height); 9 C.F.R. § 317.313(j)(2)(iv)(B) (quantitative information "shall appear adjacent to the most prominent claim"). Moreover, even assuming the quantitative information did not satisfy the FMIA technical requirements, the theory of liability alleged in the Complaint would require a determination that the labeling on the SPAM Products is misleading. Dkt. 1 ¶ 10 ("[B]ecause the defendant's labels did not comply with state and/or federal requirements . . . [Plaintiff] was *misled* by the unlawful packing and purchased the product thereon.") (emphasis added). Therefore, the Plaintiff's state-law claims related to the quantitative information are also preempted by the FMIA. *See ConAgra Foods Inc.*, 2010 WL 2867393, at *7.

The Plaintiff argues that the state-law claims are not subject to *implied preemption*, citing *Shin v. Campbell Soup Co.*, No. CV 17-1082-DMG (JCx), 2018 WL 6164264 (C.D. Cal. June 11, 2018). Reliance on *Shin* is misplaced. *Shin* found that a plaintiff's state-law claims were expressly preempted to the extent that they sought to impose state requirements in addition to or different from federal requirements under the Poultry Products Inspection Act ("PPIA").[4] *Id.* at *3. However, *Shin* also determined that the PPIA did not preempt the plaintiff's state-law claims to the extent that they were advanced to enforce federal regulations because it was not apparent that Congress intended the PPIA to preempt state-law enforcement of false or misleading poultry product labels. *Id.* Therefore, the

---

[4] The PPIA and FMIA contain substantially the same express preemption provisions. *See* 21 U.S.C. §§ 467e, 678; *see also Brower*, 243 F. Supp. at 1128.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-10944 JAK (PLAx) | | Date | April 13, 2021 |
|---|---|---|---|---|
| Title | Connie Chong v. Hormel Foods Corp. et al. | | | |

plaintiff's claims seeking to enforce regulations under the PPIA were not subject to implied preemption. *Id.*

Although *Shin* recognized that the PPIA contains an express preemptive clause, *see* 21 U.S.C. § 467e, *Shin* applied implied preemption through field preemption. *Shin*, 2018 WL 6164264, at *4. As discussed above, where the FSIS preapproves a meat product label, the express preemptive clauses of the PPIA and FMIA preclude state-law claims that allege that a label is false or misleading under such state law. *Shin* relied on *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra (Canards)*, 870 F.3d 1140 (9th Cir. 2017). In *Canards*, the Ninth Circuit held that the Cal. Health & Safety Code § 25981[5] was not impliedly preempted by the PPIA because § 25981 did not conflict with the PPIA's facility or labeling requirements. *Id.* at 1153. Rather, § 25981 prohibited a "cruel feeding practice that occurs far away from the official establishments that the PPIA regulates." *Id.* Thus, in *Canards*, it was possible to require compliance with both California's ban on force-feeding and the PPIA's facility and labeling requirements.

In contrast, the determination whether a product label on a poultry product is false or misleading is within the exclusive authority of the USDA. Therefore, the preemption clause of the FMIA applies. *See generally*, *Barnes*, 2013 WL 5530017. The application of implied preemption in *Shin* is not a persuasive approach in this action in light of the clear rules as to the express preemptive effect of the FMIA on labels approved by the FSIS. Express preemption is the issue presented here, i.e., whether the claims advanced by the Complaint under California law related to the labels would impose "[m]arking, labeling, packaging, or ingredient requirements in addition to, or different than" those implemented under the FMIA. 21 U.S.C. § 678.

Because the FMIA expressly preempts the Plaintiff's state-law claims, the Motion is **GRANTED WITH PREJUDICE** as to the claims in the Complaint arising out of the labeling on the SPAM Products. Any attempt to amend the Complaint would be futile. *See Webb v. Trader Joe's Co.*, 418 F. Supp. 3d 524, 530 n.5 (S.D. Cal. 2019) (complaint dismissed with prejudice where the "Court [did] not find that any amendment to this claim could possibly cure the deficiency as Plaintiff's claims are expressly preempted."); *Phelps v. Hormel Foods Corp.*, 244 F. Supp. 3d 1312, 1319 (S.D. Fla. 2017) ("Defendant has demonstrated that Plaintiff's claims are expressly preempted by PPIA and FMIA and that they fail to state cognizable claims. Because any amendment to the Complaint would be futile, the Court will dismiss the Complaint with prejudice.").

    B.    Website Statements

Plaintiff presents four principal issues with respect to the viability of the claims arising from the Website Statement: (i) FMIA conflict preemption; (ii) primary jurisdiction doctrine; (iii) reliance and standing; and (iv) adequacy of remedy at law instead of in equity.

---

[5] Cal. Health & Safety Code § 25981 prohibits force-feeding a bird "for the purpose of enlarging the bird's liver beyond normal size." *See Canards*, 870 F.3d at 1142 (quoting Cal. Health & Safety Code § 25981).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-10944 JAK (PLAx) | Date | April 13, 2021 |
|---|---|---|---|
| Title | Connie Chong v. Hormel Foods Corp. et al. | | |

      1.      <u>Standing as to Damages</u>

            a)      Legal Standards

Fed. R. Civ. P. 12(b)(1) provides that a party may assert a defense of lack of subject matter jurisdiction through an appropriate motion. "A suit brought by a plaintiff without Article III standing is not a 'case or controversy'" and thus, federal courts lack subject matter jurisdiction to adjudicate such. *Cetacean Community v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). To satisfy Article III standing, a plaintiff must show: (i) it has suffered an injury in fact; (ii) the injury is fairly traceable to the challenged action of the defendant; and (iii) it is likely, and not merely speculative, that the injury will be redressed by a favorable decision. *Id.* An injury-in-fact requires that the plaintiff suffer "an invasion of a legally protected interest" that is concrete and particularized and actual or imminent as opposed to conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

A motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(1) is premised on the claim that the court lacks subject matter jurisdiction. *See, e.g.*, *Savage v. Glendale Union High Sch., Dist. No. 205, Maricpoa Cty.*, 343 F.3d 1036, 1039-40 (9th Cir. 2003). Because federal courts are ones of limited jurisdiction, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citing *Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979)). A party who brings a Rule 12(b)(1) challenge may do so by referring to the face of the pleadings or by presenting extrinsic evidence. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual.").

In advancing a facial challenge, the moving party asserts that the allegations in a complaint are insufficient on their face to establish federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Courts must accept the allegations of the complaint as true in considering such a facial challenge. *See James River Holdings Corp. v. Anton & Chia LLP*, No. 8:13-CV-01396 DOC (DFMx), 2014 WL 12696367, at *2 (C.D. Cal. Jan. 17, 2014) (citing *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005)). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039.

For each of the California consumer protection claims that are advanced here, a plaintiff "must meet an economic injury-in-fact requirement, which demands no more than the corresponding requirement under Article III of the U.S. Constitution." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). "In a false advertising case, plaintiffs meet this requirement if they show that, but for relying on a misrepresentation on a product label, they . . . bought [a product] when they otherwise would not have done so." *Id.* (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1004 (9th Cir. 2013)) (internal quotation marks omitted).

To establish standing for a claim brought pursuant to the UCL, a plaintiff must allege that it suffered "injury in fact" and "lost money . . . as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. California Courts have interpreted the phrase "as a result of" to impose a reliance requirement where the "predicate unlawfulness is misrepresentation and deception." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010). This interpretation has been extended to apply to the FAL, which requires that a plaintiff show that it "suffered injury in fact . . . as a result of" a violation of false

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-10944 JAK (PLAx) | Date | April 13, 2021 |
| Title | Connie Chong v. Hormel Foods Corp. et al. | | |

advertising law. Cal. Bus. & Prof. Code § 17535. Finally, under the CLRA, a plaintiff has standing if it is injured "as a result of" an unlawful method, act or practice. Civ. Code. § 1780(a). At the pleading stage, this reliance requirement may be satisfied when the plaintiff alleges "economic injury arising from reliance on [the defendant's] misrepresentations." *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327 (2011).

With respect to the issues presented by the Motion, the reliance requirement is functionally equivalent for each state law claim. *See, e.g.*, *Durell*, 183 Cal. App. at 1355, 1367 (allegations of reliance required for UCL "unlawful" and "unfair" prongs and the CLRA); *Kwikset Corp.*, 51 Cal. at 326 (same for FAL); *McCrary v. Elations Co., LLC*, No. EDCV 13-0242 JGB OPx, 2013 WL 6403073 at *7-8 (C.D. Cal. July 12, 2013) (discussing reliance requirement for UCL, FAL, and CLRA claims).

        b)        Application

In support of the Motion, Hormel argues that the Plaintiff "does not allege that she saw the website statements before she bought the [SPAM Products], or before she learned what she now knows about their sodium and fat content." Dkt. 12-1 at 34. Consequently, the Motion has raised a "facial attack," and the allegations in the Complaint are deemed true. *See Safe Air*, 373 F.3d at 1039.

Where a plaintiff alleges that it purchased a product based on an alleged misrepresentation, this is generally sufficient to establish reliance. *See Young v. Mophie, Inc.*, No. SACV-19-827-JVS-DFMx, 2019 WL 5173770, at *1, *4 (C.D. Cal. Oct. 9, 2019).[6] Where a plaintiff "does not allege that [it] looked at or relied on" the defendant's alleged misrepresentation before purchasing the product-at-issue, the plaintiff "does not have standing to bring claims based on those statements." *McCrary*, 2013 WL 6403073, at *8.

The Complaint presents allegations as to Plaintiff's reliance on the labels of the SPAM Products when purchasing the SPAM Products. The Complaint alleges that the claims as to "25% Less Sodium" and "50% Less Fat, 25% Less Sodium, and 33% Fewer Calories" on these labels lead consumers to believe that the SPAM Products are "low in sodium and healthy" or "low in sodium and fat to be healthy" although the SPAM Products are "disqualified" from making health claims. Dkt. 1 ¶¶ 4-5. The Complaint further alleges that the Plaintiff "did not read" the "Nutrition Facts" on either label because they were "not prominently placed." *Id.* ¶ 9. The Complaint alleges that, as a result of this limited disclosure, the Plaintiff "was misled by the unlawful packaging and purchased the product based thereon" and "suffered economic injury because she purchased the products she otherwise would have not." *Id.* ¶ 10.

The Complaint further alleges that the Plaintiff "would purchase the products as long as Defendant *repairs the labels* . . . or reduces the sodium and fat contents below the disqualifying levels," Dkt. 1 ¶ 11, "learned about the SPAM Products when she saw the labels of the SPAM Products[,]" (*Id.* ¶ 19), and "purchased the SPAM Products in reliance on the Defendant's misleading labels[.]" *Id.* (emphasis added).

The allegations in the Complaint with respect to Plaintiff's reliance on the Website are more limited.

---

[6] *Young* found sufficient allegations that plaintiffs "relied on [defendant's] representations regarding the rated mAh of power the Power Bank provided and that [defendant] is able to 'charge more' for the Products based on misrepresentations about the mAh capacity." 2019 WL 5173770, at *4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-10944 JAK (PLAx) | Date | April 13, 2021 |
| Title | Connie Chong v. Hormel Foods Corp. et al. | | |

They are limited to that the Plaintiff saw the Website "during the relevant times," (*Id.* ¶¶ 7-8) and "learned about the SPAM Products when she saw . . . the advertisements in SPAM website." *Id.* ¶ 19. The allegations as to reliance on the website advertisements are also limited. Thus, the Complaint alleges that "Plaintiff purchased the SPAM Products in reliance on the Defendant's misleading labels and the advertisements." *Id.* at ¶ 19. However, the Complaint summarizes Plaintiff's claims differently: "Plaintiff's claim is essentially that, because defendant's *labels* did not comply with state and/or federal requirements regarding the quantitative information, she could not see or did not understand the quantitative information, and therefore was misled by the unlawful packaging and purchased the product based thereon." *Id.* ¶ 10 (emphasis added).

The Complaint is also without allegations of a chronology between when Plaintiff saw the Website Advertisements and bought the SPAM Lite or SPAM 25% Less Sodium. Plaintiff allegedly "bought the SPAM Products from grocery markets" "at all relevant times" and Hormel allegedly maintained advertisements on its website "[a]t all relevant times." *Id.* ¶¶ 2, 7-8. Nevertheless, the Complaint alleges that Plaintiff "purchased the SPAM Products in reliance on the Defendant's misleading labels and *the advertisements*." *Id.* ¶ 19 (emphasis added).

With respect to the labels, the Complaint includes express allegations of causation. It alleges that Plaintiff was "misled by the unlawful packaging and purchased the product based thereon" and also that Plaintiff "suffered economic injury because she purchased the products she otherwise would not have." Dkt. 1 ¶ 10. The Complaint is without similar allegations of causation related to the Website Advertisements; paragraphs 9 and 10 both focus on the labels. *See id.* ¶¶ 9-10. This leaves only the allegation that Plaintiff relied on the Website Advertisements when she "purchased the SPAM Products in reliance on the Defendant's misleading labels and the advertisements." *Id.* ¶ 19. This conclusory allegation is not sufficient to state a causal nexus between the Website Advertisements and Plaintiff's economic harm that resulted from viewing them.

For the foregoing reasons, the Complaint does not sufficiently allege standing as to the UCL, CLRA, and FAL causes of action that arise from the Website Advertising. Therefore, the Motion is **GRANTED WITHOUT PREJUDICE**, i.e., with leave to amend, as to those claims.[7]

        2.        <u>Standing for Injunctive Relief</u>

                a)        Legal Standards

"Where standing is premised entirely on the threat of repeated injury, a plaintiff must show a 'sufficient likelihood that he will again be wronged in a similar way.'" *Davidson v. Kimberley-Clark*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). A consumer may have standing to seek an injunction against false advertising or labeling where the consumer alleges that she would like to purchase the product again, but will be unable to rely on the defendant's present advertising or labeling, and that the consumer might purchase the product in the future "as she may reasonably, but incorrectly, assume the product was improved." *Davidson*, 889 F.3d at 969-71.

---

[7] Because this order dismisses the Plaintiff's UCL, FAL, and CLRA claims, the unjust enrichment cause of action must also be dismissed because "[u]njust enrichment is synonymous with restitution, which is a remedy, not an independently actionable right." *Dix v. Nova Benefit Plans, LLC*, No. CV 14-08678-AB (FFMx), 2015 WL 12859221 at *8 (C.D. Cal. Apr. 28, 2015) (citing *Durrell*, 183 Cal. App. at 1370).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-10944 JAK (PLAx) | Date | April 13, 2021 |
|---|---|---|---|
| Title | Connie Chong v. Hormel Foods Corp. et al. | | |

      b)      Application

Hormel argues that the Plaintiff "lacks standing to pursue her claims for injunctive relief" because "changing the labels or the website would not redress any harm she alleges." Dkt. 12-1 at 34. In support of this position it contends that the "Plaintiff's allegations confirm that she knows she can easily learn what she wants to know about the sodium and fat content from the Nutrition Facts panel on the existing packaging." *Id.* at 34-35. In response, Plaintiff argues that she might purchase the SPAM Products in the future, but cannot rely on their labels absent an injunction that requires them to be corrected. Dkt. 19 at 29.

The Complaint alleges that Plaintiff "would purchase the products so long as [Hormel] repairs the labels complying with state and/or federal requirements, or Defendant reduces the sodium and fat contents below the disqualifying levels." Dkt. 1 ¶ 11. This allegation refers only to the labels and the Website Advertisements. Moreover, unlike in *Davidson*, where the consumer was unable to trust whether a "flushable wipe" had been improved to become "truly flushable," the Complaint acknowledges that Plaintiff can ascertain whether the SPAM Products are "low in sodium," "low in fat," or "healthy" from the "Nutrition Facts" on the labels that Plaintiff did not read. *See* Dkt. 1 ¶¶ 5, 9; *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCx), 2018 WL 6714323 at *4 (C.D. Cal. Oct. 17, 2018) (because the plaintiff is on notice about potential underfilling, they "could easily determine the number of pretzels in each package . . . by simply reading the back panel").

Since *Davidson*, several district courts have held that where a complaint acknowledges that the desired nutritional information is available on the label of the product, the plaintiff is barred from pursuing injunctive relief because the plaintiff will not be misled in the future. *See, e.g.*, *Rahman v. Mott's LLP*, No. 13-CV-03482-SI, 2018 WL 4585024 at *3 (N.D. Cal. Sept. 25, 2018) (the plaintiff lacked standing to pursue injunctive relief because he could "rely on the packaging" now that he understands the label); *Fernandez v. Atkins Nutritionals, Inc.*, No. 3:17-CV-01628-GPC (WVGx), 2018 WL 280028 (S.D. Cal. Jan. 3, 2018) (same); *Matic v. United States Nutrition, Inc.*, No. CV-18-9592-PSG (AFMx), 2019 WL 3084335 (C.D. Cal. Mar. 27, 2019) (same); *Shanks v. Jarrow Formulas, Inc.*, No. LA-CV-18-09437-PA (AFMx), 2019 WL 7905745 at *5 (C.D. Cal. Dec. 27, 2019) (same).

Because the Complaint acknowledges that the sodium and fat content can be determined from the Nutrition Facts on the SPAM Products' labels and the Plaintiff is now aware of them, the Motion is **GRANTED WITHOUT PREJUDICE** as to the Plaintiff's request for injunctive relief.

Because this dismissal is based on a lack of subject matter jurisdiction, it is without prejudice. *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("In general, dismissal for lack of subject matter jurisdiction is without prejudice. . . . The theory undergirding the general rule is that 'the merits have not been considered' before dismissal." (quoting *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012))). However, leave to amend is not granted. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (explaining the difference between dismissing action without prejudice and without leave to amend). Here, leave to amend would be futile because the Nutrition Facts panel on the product labels prevents her from being misled in the future.

            \*                \*                \*                \*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-10944 JAK (PLAx) | Date | April 13, 2021 |
|---|---|---|---|
| Title | Connie Chong v. Hormel Foods Corp. et al. | | |

Because this Order has concluded that all claims for false or misleading statements or information related to the labels are preempted under the FMIA, the inquiry as to whether the Complaint otherwise states a claim is limited to those related to the Website Advertisements. However, the Motion has been granted as to the lack of standing. Therefore, there is no subject-matter jurisdiction as to the evaluation of the merits of the claims as presently alleged. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).

**V.      Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED**. The Complaint is **DISMISSED WITH PREJUDICE** as to the claims arising out of the labeling on the SPAM Products. The Complaint is **DISMISSED WITHOUT PREJUDICE** as to the claims arising out of the Website Advertisements. Leave to amend is granted with respect to the Website Advertisements to the extent Plaintiff seeks damages rather than injunctive relief. Any amended complaint shall be filed on or before April 27, 2021. Defendant shall answer or otherwise respond to any amended complaint within 14 days of any amended complaint being filed.

The class certification hearing that is presently scheduled for May 17, 2021 at 8:30 a.m. is **VACATED**. No appearance by counsel is necessary. Within 14 days of Defendant filing an answer or response to any amended complaint, the parties shall file a joint report stating their collective and/or respective position(s) on what modifications to the Scheduling Order (Dkt. 30) are appropriate.

**IT IS SO ORDERED.**

                                                                                    :

                                             Initials of Preparer    TJ